# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GRACIE K. BEARDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-16-1293-HE |
| | ) | |
| STATE OF OKLAHOMA *ex rel.* | ) | |
| THE BOARD OF REGENTS OF | ) | |
| THE UNIVERSITY OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Gracie K. Bearden filed this action against the State of Oklahoma, *ex rel.* Board of Regents of the University of Oklahoma ("University") alleging that the University violated the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act ("Rehab Act") when, while she was a nursing student, it failed to accommodate her disabilities. The University has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6). It contends plaintiff has failed to state a claim under either the ADA or the Rehab Act and that it is immune from liability for money damages under Title II of the ADA.

When considering whether a plaintiff's claim should be dismissed under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014). While all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), the complaint still must contain "enough facts to state a claim to relief that is plausible on its

face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 555 (2007). Considering plaintiff's claims under this standard, the court concludes defendant's 12(b)(6) argument fails.

In support of its position that plaintiff has failed to plead facts sufficient to establish a violation of the Rehab Act or Title II of the ADA, the University cites McGuinness v. Univ. of New Mexico Sch. of Med., 170 F.3d 974 (10th Cir. 1998). That case, however, was decided on summary judgment, not a motion to dismiss. The issue at this stage of this proceeding is whether plaintiff has pleaded that she had been discriminated against and the court concludes she has. Defendant's arguments, such as whether it should "be forced to unreasonably accommodate a student by permitting her to advance in her studies if she has not demonstrated a requisite level of competency," doc. #10, p. 7,[1] raise issues of fact that cannot be resolved at this time.

More difficult is defendant's argument that it is entitled to Eleventh Amendment immunity with respect to plaintiff's ADA claim. States and their agencies generally are protected from suit by sovereign immunity "as guaranteed by the Eleventh Amendment." Levy v. Kansas Dep't of Soc. & Rehab. Servs., 789 F.3d 1164, 1168 (10th Cir. 2015). Three exceptions to the Eleventh Amendment's guarantee of immunity exist:

---

[1] *While the court notes that plaintiff did plead that the University accommodated her disabilities in several respects, she nonetheless also alleged that it discriminated against her because of her disabilities.*

2

> First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Id*. at 1169 (quoting Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1166 (10th Cir.2012)).

The Supreme Court held in Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 (2001), that "Congress did not validly abrogate sovereign immunity for employment discrimination claims made against states under Title I of the ADA." *Id.* However, as discussed in Levy, the Supreme Court later concluded in United States v. Georgia, 546 U.S. 151, 159 (2006), that "states can be sued on claims of discrimination in the provision of public services under Title II of the ADA when states actually violate the Fourteenth Amendment or when such services implicate fundamental constitutional rights." *Id.*

To answer the specific question here, "whether the accommodation requirement of Title II is a valid exercise of § 5 authority, as it applies to cases involving [higher public education]," Guttman v. Khalsa, 669 F.3d 1101, 1113 (10th Cir. 2012), which neither the Supreme Court nor the Tenth Circuit has resolved, the court applies the three-step analysis from United States v. Georgia. *Id.* That requires the court to determine "'(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation

3

of sovereign immunity as to that class of conduct is nevertheless valid.'" *Id.* (quoting Georgia, 546 U.S. at 159)).

The first step requires identification of "the state's conduct that allegedly violated Title II's prohibition against disability discrimination in the provision of state services or programs." *Id.* Plaintiff claims the State's College of Nursing discriminated against her because of her disabilities by failing to follow its own policies and procedures when she had academic difficulties.

The second step requires an assessment of plaintiff's Fourteenth Amendment claims. *Id.* Here there is nothing to assess, as plaintiff does not allege any constitutional violations in the complaint.[2] While she does discuss equal protection and substantive due process claims in her response brief, the court can only consider what she has actually pleaded.[3] As plaintiff failed to allege a Fourteenth Amendment violation, the court "must proceed to the final Georgia step to determine whether the purported abrogation of sovereign immunity is valid." *Id.*[4]

---

[2] *See* Guttman, *669 F.3d at 1108 (plaintiff filed an amended complaint which included an equal protection and a procedural due process claim).*

[3] *A plaintiff cannot amend a complaint by allegations in a brief.*

[4] *As the Tenth Circuit explained in* Guttman, *"[u]nder the Fourteenth Amendment, a state may be subject to a statutory suit under Title II of the ADA, even if there is no allegation of an actual Fourteenth Amendment violation."* Guttman, *669 F.3d at 1116. The reason is, "the scope of Congress's power to enact remedial legislation under § 5 of the Fourteenth Amendment is broad. Congress' power to enforce the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct than that which the Amendment itself proscribes."* Id. (internal quotation marks omitted).*

4

To determine the validity of Congress' action the court must consider:[5] "(1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." Guttman, 669 F.3d at 1117 (citing City of Boerne v. Flores, 521 U.S.50, 529-36 (1997)).

The Tenth Circuit emphasized in Guttman that "[t]he Supreme Court has instructed [courts] to assess Eleventh Amendment abrogation on a case-by-case basis—'[w]ith respect to the particular [governmental] services at issue in [the] case.'" Id. (quoting Tennessee v. Lane, 541 U.S. 509, 527 (2004)). In Guttman the court considered "whether the accommodation requirement of Title II is a valid exercise of the § 5 authority, as it applies to cases involving professional licensing." Id. at 1113. The plaintiff in that case, a physician, had sued the state for money damages after it revoked his medical license based on his mental condition. Applying the City of Boerne analysis, the court determined that "Title II does not validly abrogate [the state's] sovereign immunity in the context of professional licensing." Id. at 1125. It reached that decision after concluding that: (1) the

---

[5] *The Supreme Court has held that "Congress may abrogate state sovereign immunity if Congress (1) unequivocally indicates its intent to abrogate state sovereign immunity, and (2) acts pursuant to a valid grant of constitutional authority under § 5." Guttman, 669 F.3d at 1117 (citing Garrett, 531 U.S. at 363). Because there is "no question Congress intended Title II to abrogate state sovereign immunity," id., the remaining question is the validity of its action. Id.*

5

constitutional right asserted -- "a disabled individual's right to practice in his chosen profession" -- was not entitled to heightened scrutiny, *id.* at 1118; (2) "Congress did not identify a history of irrational discrimination in professional licensing when enacting Title II," *id*. at 1119; and (3) the Title II remedy was not "congruent and proportional," *id.* at 1119–25, "in the context of the class of cases implicating disability discrimination in professional licensing." *Id*. at 1120.

Here the right at issue -- a disabled individual's right to receive an undergraduate degree -- also is not a fundamental right. *Id.* at 1123 n.4. And "[t]he disabled are not a suspect class for equal protection purposes." Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir.2006). The Tenth Circuit commented in Guttman that: "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity . . .[And] [t]he bent of these cases has led at least one commentator to conclude that, when 'the plaintiff is not alleging a constitutional violation and the case does not involve a type of discrimination or a right receiving heightened scrutiny, the state can be sued only if Congress found pervasive unconstitutional state conduct.'" *Id*. at 1122-23 (quoting Erwin Chemerinsky, Federal Jurisdiction 477 (5th ed.))." However, the court also stated:

> We pause to note one exception to this trend: discrimination against students in public education. Several circuit courts have found Title II validly abrogates state sovereign immunity in this context, even though education does not involve a fundamental right. See, e.g., Toledo, 454 F.3d at 39-40; Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 490 (4th Cir.2005); Ass'n for Disabled Ams., Inc. v. Florida Int'l Univ., 405 F.3d 954, 959 (11th Cir.2005). In reaching this conclusion, these courts have been persuaded by (1) the persistent pattern of exclusion and irrational treatment of disabled students in public education, (2) the gravity of the harm worked by such discrimination, and (3) the limited nature of the compliance costs imposed on states. *See* Toledo, 454 at 39–40. While the Supreme Court has yet to test the logic of these cases, the cases suggest the exceptionally well-documented history of irrational discrimination in schools is sufficient to compensate for the right's limited value in the constitutional scheme. *See id*. at 36–39. Discrimination against students in public education is an exception that proves the rule.[6]

Guttman, 669 F.3d at 1123 n.4.

In Ass'n for Disabled Ams., 405 F.3d at 954, one of the cases cited by the Tenth Circuit, the plaintiffs sued Florida International University, a public university funded by the State of Florida, alleging that it had violated Title II of the ADA by, among other things, "failing to provide qualified sign language interpreters, failing to provide adequate auxiliary aids and services such as effective note takers, and failing to furnish appropriate aids to its students with disabilities such as physical access to certain programs and facilities" at the university. *Id.* at 955. Pointing to the Supreme Court's reference in Lane to multiple examples of state sanctioned public school disability discrimination, the Eleventh Circuit concluded that, "[l]ike the discrimination at issue in Lane, the 'unequal treatment of disabled persons in the administration of' education has a 'long history, and has persisted despite several legislative efforts to remedy the problem of disability

---

[6] *The court recognizes that this comment is dicta.*

discrimination.'" *Id.* at 958 (quoting Lane, 124 S.Ct. at 1993). The circuit court also determined that Congress responded with a limited remedy – "Title II only prohibits discrimination by reason of disability" – and it "requires only reasonable modifications that would not fundamentally alter the nature the nature of the services provided." *Id*. (internal quotation marks omitted). Accordingly, the court held that the "relief available under Title II of the ADA is congruent and proportional to the injury and the means adopted to remedy the injury." *Id.*

The court agrees with the Eleventh Circuit's analysis and that of First Circuit in Toledo and Fourth Circuit in Constantine, [7] regarding the last two prongs of the City of Boerne test. Because"[d]isability discrimination has clearly been identified in the context of public education," Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 554 n.35; 42 U.S.C. § 12101(a)(3),[8] "Title II was 'responsive to, or designed to prevent, unconstitutional behavior.'" Guttman, 669 F3d at 1118 (quoting City of Boerne, 521 U.S. at 532). And, "the remedial measures contained in Title II represent a congruent and proportional response to this demonstrated history and pattern of unconstitutional disability

---

[7] *Toledo and Constantine involved students who, like plaintiff here, had academic issues allegedly attributable to a state university's failure to reasonably accommodate their disabilities.*

[8] *Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. According to Congress, this provision was necessary because "discrimination against individuals with disabilities persists in such critical areas as . . . housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." Id. § 12101(a)(3) (emphasis added).*

discrimination." Constantine, 411 F.3d at 487-88;[9] see Bowers, 475 F.3d at 556 (In case in which plaintiff claimed he was denied access to a program at a public university because of his disability, the court "join[ed] several sister circuits in holding that Congress acted within its Constitutional authority in abrogating sovereign immunity under Title II of the ADA"). The court therefore concludes that "Title II, as it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." Toledo, 454 F.3d at 40. Eleventh Amendment immunity is not a defense to plaintiff's ADA claim.

Accordingly, defendant's motion to dismiss [Doc. #10] is **DENIED**.

IT IS SO ORDERED

Dated this 10th day of February, 2017.

*[signature]*

JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[9] As explained by the court in Constantine, "Title II and its implementing regulations limit the scope of liability in important respects and thus minimize the costs of compliance with the statute." Constantine, 411 F.3d at 489.